UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO.  3:16-CV-594-DJH

*ELECTRONICALLY FILED*

DR. THOMAS HOUSE                                                        PLAINTIFFS

      and

NATIONAL PITCHING ASSOCIATION, INC.
P.O. Box 2350
Del Mar, CA 92014


v.


PLAYER'S DUGOUT, INC.                                                  DEFENDANT
P.O. Box 406
Elizabethtown, KY 42702


      Serve:         Joseph A. Newton, Jr.
                     3026 Ring Road
                     Elizabethtown, KY 42701
                     Registered Agent for Service of Process


## VERIFIED COMPLAINT

Plaintiffs, Dr. Thomas House ("Dr. House") and National Pitching Association, Inc.

("NPA") (collectively, the "Plaintiffs"), for their Verified Complaint against Defendant, Player's

Dugout, Inc. ("PDI" or "Defendant"), hereby state as follows:

1

## Nature of the Action

1.     This is a civil action for breach of a License Agreement, trademark infringement, unfair competition, and unjust enrichment arising under the common law of Kentucky and the trademark laws of the United States.

## Jurisdiction and Venue

2.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338, and the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. In addition, the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs, and jurisdiction is, therefore, proper also pursuant to 28 U.S.C. § 1332.

3.     This Court has personal jurisdiction over the Defendant by virtue of the fact that PDI is a Kentucky corporation which regularly transacts business in the Commonwealth of Kentucky.

4.     Venue is proper in the Western District of Kentucky pursuant to 28 U.S.C. § 1391, because PDI regularly transacts business in this judicial district, is otherwise subject to the personal jurisdiction of this Court, and a substantial portion of the acts and omissions referenced herein have occurred in this judicial district.

## Parties

5.     Dr. House is a resident and citizen of the State of California, and is the founder as well as a shareholder, director, and officer of NPA.

6.     NPA is a corporation organized and existing under the laws of the State of California, and maintains its principal office at the address identified in the caption of this Complaint. For diversity jurisdiction purposes, NPA is a resident and citizen of California.

7.      PDI is a corporation organized and existing under the laws of the Commonwealth of Kentucky, and maintains its principal office at the address identified in the caption of this Complaint. For diversity jurisdiction purposes, PDI is a resident and citizen of Kentucky.

Statement of Facts

8.      Dr. House holds a Ph.D. in sports psychology, and is both a former pitcher and pitching coach for several major league baseball teams. Dr. House has been introducing and developing innovative programs and techniques for the improvement and enhancement of the performance of athletes, since working with Hall of Fame pitcher Nolan Ryan in the mid-1980's. Dr. House, individually and through his work with NPA, has helped numerous athletes improve their skills, avoid injuries and prolong their careers, including, without limitation, several major league baseball pitchers and NFL quarterbacks Tom Brady, Drew Brees, and Andy Dalton.

9.      One of the skill enhancement and injury avoidance programs for athletes developed by Dr. House is the *Personally Adaptive Joint Threshold Training Program* (the "PAJTT Program").

10.      On or about February 1, 2014, Dr. House and PDI entered into a License Agreement (the "Agreement"), whereby Dr. House agreed to grant to PDI, subject to the terms and conditions set forth therein, an exclusive, world-wide license to use Dr. House's "know-how" (as defined in the Agreement) for the purpose of commercializing the PAJTT Program under the name of *Velocity Plus Arm Care Program* ("Velocity Plus"), limited specifically to the sports of baseball and softball. (A true and correct copy of the Agreement is attached hereto as Exhibit A.)

11.      As compensation to Dr. House for the rights granted under the Agreement, PDI agreed to compensate Dr. House as follows: (i) payment of a royalty of 10.99% of the total sales

price of Velocity Plus to a first time participant; (ii) payment of a royalty of 13.56% of the total sales price of Velocity Plus to a repeating participant; (iii) a commission payable to NPA in the amount of $130 for each new participant in the PAJTT Program; and (iv) a commission payable to NPA in the amount of $80 for each participant who repeats the PAJTT Program. All royalties and commissions to be paid under the Agreement were due and payable by the 10th day of the month next following the end of each calendar month during the term of the Agreement. (Agreement, § 3.)

12.     Pursuant to Section 3(e) of the agreement, PDI agreed that, on or before the date on which royalties/commissions were payable, PDI would furnish to Dr. House a report signed by a responsible officer of PDI showing in detail the amounts of royalties/commissions payable during the preceding month together with such supporting information as may reasonably be defined by Dr. House. PDI also agreed to keep full and accurate records in sufficient detail to enable royalties/commissions payable under the Agreement to be determined, and to permit such records to be examined by Dr. House or his designee during the term of the Agreement and for two (2) years thereafter at all reasonable times at the premises of PDI.

13.     As early as 2004, and long prior to any act of PDI complained of herein, NPA adopted and commenced using in commerce in the United States a trademark consisting of a silhouette of a pitcher with overhead swoosh, for and in connection with skills improvement and injury avoidance programs for athletes, and this mark has been continuously so used in the United States since that time (the "NPA Trademark"). NPA owns United States Trademark Registration No. 3,202,667 for the NPA Trademark. The above-referenced trademark registration is valid and subsisting, is in full force and effect, and has become incontestable pursuant to 15

U.S.C. § 1065. (A true and correct copy of the registration for the NPA Trademark is attached hereto as Exhibit B.)

14.     NPA's continuous use of the NPA trademark has given rise to coaches, athletes, and other members of the public associating it with skills/injury avoidance programs developed by NPA and Dr. House, such that the use of such mark constitutes a valuable trademark of NPA which further serves to identify NPA's programs and distinguish them from competitive products of others.

15.     For over 10 years, NPA has advertised and promoted the NPA Trademark in nationally circulated publications. NPA has also advertised and promoted the NPA Trademark through a wide variety of other marketing materials.

16.     As a result of the long use and extensive advertising and promotion by NPA of the NPA Trademark, such mark has become widely recognized and well-known throughout the United States by coaches, athletes, and others, and has become associated with NPA's and Dr. House's programs, as a means by which their programs are known to coaches and athletes and by which the source and origin of NPA's programs are identified. As a result, NPA and Dr. House have acquired valuable goodwill and reputational association in the NPA trademark.

17.     In conjunction with the Agreement, PDI was permitted by NPA and Dr. House to use and display the NPA Trademark on its website and in various other marketing/promotional materials during the course of its commercialization of the PAJTT Program.

18.     PDI ceased paying royalties and commissions due and owing under the Agreement in August of 2015. The last payment made by PDI under the Agreement was on August 8, 2015 and such payment was for the July 2015 sales month.

19.     The Agreement was in full force and effect when PDI ceased paying

royalties/commissions thereunder in August of 2015, as neither party sought to terminate it

pursuant to the terms thereof at that time.

20.     Further, PDI ceased complying with the sales reporting and accounting

requirements set forth in Section 3(e) of the Agreement as of August 2015.

21.     Thereafter, Dr. House and NPA repeatedly requested PDI's representatives to

cure and rectify its breach of the Agreement relating to non-payment of royalties/commissions

and failure to provide the required reporting documents to permit Plaintiffs to verify the total

amount of royalties/commissions due and owing from PDI. PDI ignored Plaintiffs' demands and

requests in this regard.

22.     By letter dated June 29, 2016, Plaintiffs' counsel notified PDI, through its

counsel, that in light of PDI's breach of the Agreement due to non-payment of

royalties/commissions and failure to comply with the reporting requirements thereunder,

pursuant to Section 10(a) of the Agreement, PDI had 30 days to pay the sum of $500,000 in

liquidated damages to Dr. House if it wished to override and prevent the termination of the

Agreement. Plaintiffs' counsel further directed PDI to immediately comply with the reporting

requirements set forth in Section 3(e) of the Agreement and to immediately tender a check to Dr.

House for all royalties and commissions due and owing under the Agreement for the sales

months of August 2015 through the then present date. (A true and correct copy of Plaintiffs'

counsel's letter dated June 29, 2016 is attached hereto as Exhibit C.)

23.     PDI has failed to pay the sum of $500,000 in liquidated damages required by

Section 10(a) of the Agreement in order for PDI to continue to have the right to commercialize

the PAJTT Program. Nor has PDI paid any back royalties to Dr. House or complied with the reporting requirements set forth in the Agreement.

24.     Nonetheless, PDI has continued to benefit from its commercialization of the PAJTT Program through its promotion, marketing, and sale of Velocity Plus.

25.     Moreover, PDI continues to use Dr. House's name, reputation, and goodwill, as well as the NPA Trademark, in order to unjustly reap the benefits of its commercialization of the PAJTT Program without paying compensation to Dr. House and NPA. (True and correct copies of pages printed from PDI's website shortly prior to filing this complaint displaying Dr. House's name, likeness, and the NPA Trademark are attached hereto collectively as Exhibit D.)

## COUNT I

(Breach of License Agreement: Failure to Pay Royalties/Liquidated Damages)

26.     Plaintiffs incorporate by reference, as if set forth fully herein, the allegations contained in numerical paragraphs 1-25 of this Verified Complaint.

27.     Based upon the facts set forth herein, PDI has breached the Agreement by failing to pay royalties and commissions to Dr. House due and owing thereunder, and by refusing to comply with the reporting requirements set forth in the Agreement in order to allow Dr. House to determine the full amount of royalties/commissions due and owing from PDI.

28.     By continuing to benefit from the commercialization of the PAJTT Program following Dr. House's notice of liquidated damages due in order to continue under the Agreement, PDI has assented to the payment of the sum of $500,000 in liquidated damages to Dr. House, as required by Section 10(a) of the Agreement.

29.     To date, PDI has failed or refused to pay either back royalties/commissions or liquidated damages to Dr. House due and owing under the Agreement, while continuing to benefit from the Agreement.

30.     As a direct and proximate result of PDI's breach of the Agreement as set forth above, Dr. House has been damaged in an amount which exceeds $500,000, the exact amount of which will be proven with a reasonable degree of certainty at trial.

## COUNT II

(Breach of Agreement: Injunctive Relief)

31.     Plaintiffs incorporate by reference, as if set forth fully herein, the allegations contained in numerical paragraphs 1-30 of this Verified Complaint.

32.     Section 5 of the Agreement provides that if the Agreement is terminated, then PDI shall not engage, directly or indirectly, in any part of the business of marketing or servicing the PAJTT Program for a period of two (2) years.

33.     Section 10(e) of the Agreement provides that in the event of termination, PDI is obligated to return to Dr. House all printed or written materials containing, based upon, or derived from Dr. House's "know-how", and shall make no further use of such know-how or his intellectual property.

34.     To the extent that the Agreement has been terminated as a result of PDI's breach thereof, and as alternative relief to the liquidated damages payment sought in Count I hereof, PDI has breached Sections 5 and 10(e) of the Agreement by continuing to engage in the business of marketing and servicing the PAJTT Program, and by continuing to use Plaintiffs' name, goodwill, reputation, and intellectual property in connection with its commercialization of the PAJTT Program.

35.     The injury to Plaintiffs from PDI's actions as set forth above is continuing, immediate and irreparable.

36.     As a direct and proximate result of PDI's actions set forth above, Plaintiffs are entitled to preliminary and permanent injunctive relief prohibiting PDI from violating the Agreement in the manner set forth above, and for all monetary damages suffered as a result of such violations prior to issuance of injunctive relief.

## COUNT III

### (Federal Trademark Infringement)

37.     Plaintiffs incorporate by reference, as if set forth fully herein, the allegations contained in numerical paragraphs 1-36 of this Verified Complaint.

38.     PDI's continued use of the registered NPA Trademark on its website and in its marketing and promotional materials relating to its commercialization of the PAJTT Program without paying royalties, commissions, and liquidated damages to Plaintiffs, constitutes willful trademark infringement in violation of 15 U.S.C. § 1114(1).

39.     As a result of PDI's willful trademark infringement, NPA is entitled to a judgment against PDI for NPA's compensatory damages, PDI's profits, treble damages, NPA's reasonable attorney's fees, and the costs of this action, arising from PDI's wrongful conduct, in an amount to be proven at trial.

40.     PDI's willful conduct constituting trademark infringement, unless enjoined by this Court, will cause irreparable damage, loss, and injury to NPA for which NPA has no adequate remedy of law.

41.     Consequently, in addition to all monetary damages and penalties to which NPA is entitled, NPA is entitled to preliminary and permanent injunctive relief from the Court prohibiting PDI from willfully infringing NPA's registered trademark.

## COUNT IV

(Unfair Competition under Lanham Act)

42.     Plaintiffs incorporate by reference, as if set forth fully herein, the allegations contained in numerical paragraphs 1-41 of this Verified Complaint.

43.     In connection with PDI's Velocity Plus program offered in commerce, PDI has used and continues to use Dr. House's name, reputation, and goodwill, along with the NPA Trademark, as well as other words, terms, names, symbols, or devices, or combinations thereof, in order to falsely and in a misleading manner convey to the public that there is an ongoing association between Dr. House/NPA and PDI, and that PDI is authorized to use Dr. House's and NPA's name, goodwill, and intellectual property in connection with PDI's marketing efforts, when in fact by refusing to pay royalties, commissions, and liquidated damages to Plaintiffs under the Agreement, PDI is not authorized to use or benefit from Dr. House/NPA's name, goodwill, reputation, and intellectual property.

44.     PDI's wrongful conduct as set forth above is likely to cause confusion, or mistake, or to deceive the public as to the affiliation, connection, or association of Dr. House/NPA with PDI, in willful violation of 15 U.S.C. 1125(a).

45.     As a result of PDI's willful violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), as set forth above, Plaintiffs are entitled to a judgment against PDI, in an amount to be proven at trial, for their compensatory damages, PDI's profits arising from its wrongful activities, treble damages, their reasonable attorney's fees, and the costs of this action.

46.     Plaintiffs are further entitled to preliminary and permanent injunctive relief enjoining PDI from continuing its violations of Section 43(a) of the Lanham Act, in order to prevent the ongoing and immediate irreparable damage, loss, and injury to the Plaintiffs arising from PDI's wrongful conduct for which Plaintiffs have no adequate remedy at law.

## COUNT V

(Common Law Trademark Infringement)

47.     Plaintiffs incorporate by reference, as if set forth fully herein, the allegations contained in numerical paragraphs 1-46 of this Verified Complaint.

48.     The acts of PDI complained of herein constitute trademark infringement in violation of the common law of Kentucky.

49.     The aforesaid acts by PDI have caused monetary damages to Plaintiffs in an amount to be proven at trial, and unless enjoined by this Court, will continue to cause irreparable damage, loss, and injury to NPA for which NPA has no adequate remedy of law.

## COUNT VI

(Common Law Unfair Competition)

50.     Plaintiffs incorporate by reference, as if set forth fully herein, the allegations contained in numerical paragraphs 1-49 this Verified Complaint.

51.     The acts of PDI complained of herein constitute unfair competition in violation of the common law of Kentucky.

52.     The aforesaid acts of PDI have caused monetary damages to Dr. House and NPA in an amount to be proven at trial, and unless enjoined by this Court, will continue to cause irreparable damage, loss, and injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.

## COUNT VII

### (Unjust Enrichment)

53.     Plaintiffs incorporate by reference, as if set forth fully herein, the allegations contained in numerical paragraphs 1-52 of this Verified Complaint.

54.     Based upon the facts set forth herein, Plaintiffs have conferred valuable economic benefits upon PDI under circumstances in which it would be both unjust and inequitable for PDI to retain such benefits without tendering just compensation to Plaintiffs.

55.     Plaintiffs are, therefore, entitled to a judgment against PDI, in an amount to be determined at trial, for the value of the economic benefits conferred upon PDI which have been unjustly retained by PDI without paying just compensation to the Plaintiffs.

## COUNT VIII

### (Punitive Damages)

56.     Plaintiffs incorporate by reference, as if set forth fully herein, the allegations contained in numerical paragraphs 1-55 of this Verified Complaint.

57.     By its wrongful actions set forth herein, PDI has engaged in fraud, oppression, or malice towards the Plaintiffs, within the meaning of KRS 411.184.

58.     Alternatively, PDI has engaged in gross negligence towards the Plaintiffs.

59.     As a result, the Plaintiffs are entitled to an award of punitive damages against PDI, in an amount to be determined by the trier of fact, in order to deter PDI from engaging in future egregious conduct.

WHEREFORE, the Plaintiffs respectfully request the following relief from the Court:

A.  A judgment against PDI under one or more of Counts I-VII, in an amount to be determined on or before trial, as may be appropriate, and consistent with the principles of alternative pleading;

B.  A preliminary and permanent injunction against PDI pursuant to 15 U.S.C. § 1116 and the principles of Kentucky jurisprudence prohibiting PDI from continuing to violate Plaintiffs' rights in the manner set forth herein;

C.  An award of punitive damages against PDI in an amount to be determined by the trier of fact;

D.  An award of Plaintiffs' reasonable attorney's fees and costs herein;

E.  An award of treble damages against PDI as warranted under federal trademark and unfair competition law;

F.  A trial by jury of all issues so triable;

G.  Any further legal or equitable relief to which Plaintiffs may be entitled.

Respectfully submitted,

VALENTI HANLEY PLLC

/s/ Michael A. Valenti
Michael A. Valenti
Lee S. Archer
One Riverfront Plaza, Suite 1950
401 West Main Street
Louisville, KY 40202
mvalenti@vhrlaw.com
larcher@vhrlaw.com
PH    (502) 568-2100
FAX   (502) 568-2101
*Counsel for Plaintiffs Dr. Thomas House and National Pitching Association, Inc.*

## VERIFICATION

I, Dr. Thomas House, Plaintiff in the above-referenced Action, verify that the facts alleged in the foregoing Complaint are true and correct to the best of my information, knowledge and belief as of the date hereof.

_____
Dr. Thomas House

STATE OF __CALIFORNIA__ )
                                ) SS
COUNTY OF __SAN DIEGO__ )

Subscribed and sworn to me by Dr. Thomas House, on this the 13th day of September, 2016.

EDUARDO HERNANDEZ
Commission # 2112315
Notary Public - California
San Diego County
My Comm. Expires May 19, 2019

Edvardo Hernandez
_____
Notary Public

May 19, 2019
_____
Commission Expires

## VERIFICATION

I, Dr. Thomas House, CEO of National Pitching Association, Inc., Plaintiff in the above-referenced Action, verify that the facts alleged in the foregoing Complaint are true and correct to the best of my information, knowledge and belief as of the date hereof.

_____
Dr. Thomas House, CEO of National Pitching Association, Inc.

STATE OF __CALIFORNIA__ )
                                ) SS
COUNTY OF __SAN DIEGO__ )

Subscribed and sworn to me by Dr. Thomas House, President of National Pitching Association, Inc., on this 13th day of September, 2016.



EDUARDO HERNANDEZ
Commission # 2112315
Notary Public - California
San Diego County
My Comm. Expires May 19, 2019

Eduardo Hernandez
_____
Notary Public

May 19, 2019
_____
Commission Expires

14