**FILED**

JAMES J.VILT JR,
CLERK

November  24, 2021

U.S. DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO.  3:16-cv-594-RGJ**

**DR. THOMAS HOUSE, et al.**                                    **Plaintiffs**

**v.**

**PLAYERS' DUGOUT, INC., et al.**                              **Defendants**


**JURY INSTRUCTIONS**

**INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. I will start by explaining your duties and the general rules that apply in every case. Then I will explain the rules of law that you must apply in deciding whether the parties have proven the elements of their respective counts. Then I will explain some rules that you must use in evaluating the testimony and evidence. And last, after closing arguments, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

## JURORS' DUTIES

You have two main duties as jurors. The first duty is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, and apply it to the facts as you find them from the evidence in this case. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions I give you, even if you personally disagree with them. This includes the instructions I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

The lawyers may have talked about the law during their arguments. But if what they said is different from what I say, you must follow what I say. What I say about the law controls. Perform these duties fairly. Do not let any bias, sympathy or prejudice you may feel toward one side or the other influence your decision in any way. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you and reach a just verdict.

**BURDEN OF PROOF**

Plaintiffs have the burden in a civil action, such as this, to prove every essential element of their claims by a "preponderance of the evidence." You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard applicable in criminal cases. It does not apply in civil cases such as this and you should not use it. In this case, if a Plaintiff should fail to establish any essential element of their claim by a "preponderance of the evidence," you should find for the Defendant on that claim.

As to the counterclaims, the Defendant(s) is in the position of a plaintiff and the Defendant has the burden of providing the essential elements of the counterclaim.

"Establish by a preponderance of the evidence" means evidence, which as a whole, shows that the fact sought to be proved is more probable than not. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proven by a preponderance of the evidence unless otherwise instructed you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

## MULTIPLE PARTIES

Although there is more than one plaintiff and more than one defendant in this action, it does not follow from that fact alone that if one Defendant is liable to a Plaintiff or Plaintiffs, that all Defendants are liable to all Plaintiffs.  Likewise, if one Plaintiff is liable to a Defendant or Defendants, that fact alone does not mean that all Plaintiffs are liable. Each Plaintiff or Defendant is entitled to a fair consideration of the evidence. Neither Defendant is to be prejudiced should you find against the other. Neither Plaintiff is to be prejudiced should you find against the other. Unless otherwise stated, all instructions I give you govern the case as to each Plaintiff and Defendant, individually.

**EVIDENCE DEFINED**

You must make your decision based only on the evidence you saw and heard here in court. Do not let rumors, suspicions, or anything else you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath; the exhibits that I allowed into evidence; and the stipulations that the lawyers agreed to.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two kinds of evidence: direct and circumstantial.

"Direct evidence" is direct proof of a fact, such as testimony of a person who asserts or claims to have actual knowledge of a fact.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

"Circumstantial evidence" is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude it was raining.

You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves. The law makes no distinction between the weight to be given to either direct or circumstantial evidence.

## CREDIBILITY OF WITNESSES

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony. You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

## NUMBER OF WITNESSES

The weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses that does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence producing such belief in your minds.

The test is not which side brings the greater number of witnesses or takes the most time to present its evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.

**EXPERT WITNESSES & OPINION TESTIMONY**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. There is an exception to this rule for "expert witnesses." An expert witness is a person who by education and experience has become expert in some art, science, profession, or calling. Expert witnesses state their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves. If you should decide the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel the expert's opinion is outweighed by other evidence, you may disregard the opinion entirely.

**ALL PERSONS EQUAL BEFORE THE LAW—CORPORATIONS**

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A corporation is entitled to the same fair trial as a private individual. All persons, including corporations, stand equal before the law, and are to be treated as equals.

## CORPORATE PARTY'S AGENTS AND EMPLOYEES

A corporation may act only through natural persons who are its agents or employees. Generally, any agents or employees of a corporation may bind the corporation by their acts and declarations made while acting within the scope of their authority delegated to them by the corporation or within the scope of their duties as employees of the corporation.

## ADVICE OF COUNSEL

Where the Defendant's state of mind is at issue, the Defendant can make the defense that he in good faith followed the advice of counsel which would be inconsistent with an unlawful intent in a criminal case or malice in a case involving malicious prosecution. In order to assert this defense, Defendants must make a full disclosure of all material facts to the attorney, receive the attorney's advice as to the specific course of conduct that was followed, and reasonably follow the attorney's recommended course of conduct and advice in good faith. Neither party has asserted advice of counsel as a defense to the claims asserted by the other party and this is not case where mens rea is at issue.

## CLAIMS AND COUNTERCLAIMS

To help you with these instructions, I will give you a brief summary of the positions of the parties:

The Plaintiffs are Dr. Thomas House ("Dr. House") and the National Pitching Association, Inc. ("NPA").  They assert various claim against the Defendants and have the burden of proving these claims by a preponderance of the evidence.

The Defendants are Players' Dugout, Inc. ("Players' Dugout"), Joseph John Newton and Joseph Arthur Newton, Jr. (the "Newtons").  They assert various counterclaims and have the burden of proving these counterclaims by a preponderance of the evidence.

**COUNT 1 AND COUNTERCLAIM 1: BREACH OF LICENSE AGREEMENT**

The first claims that I will instruct you on are the breach of contract claims related to the License Agreement. Dr. House and Players' Dugout have asserted breach of contract claims against one another based on alleged breaches of the License Agreement dated February 1, 2014 and each party is asking you to award damages as a result of the other party's breach.

To prevail on a breach of contract claim, the party must prove that each of the following elements is more likely true than not:

(1) the existence of a contract;

(2) a breach of that contract; and

(3) damages flowing from the breach.

As to the first element, whether "a contract existed," it is undisputed that a valid contract, the License Agreement, existed. Therefore, you may accept this fact as established.

A "breach of contract" occurs when the party accused of breach of contract did something that was prohibited by the specific provisions of the contract or failed to do something that the contract specifically required. A party first guilty of breach of contract cannot complain if the other party refuses to perform after the first party's breach. But a party to a contract may waive a breach of a provision of the contract and it's right to refuse to perform after the first party's breach. A "waiver" is a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option may have demanded or insisted upon. Waiver may be expressed or inferred from the acts or conduct of a party. Where a party waives a breach of a provision of the contract, it may not assert its previously waived breach as an excuse from performance.

(1) You must determine from the evidence whether Dr. House has proven that it is more likely true than not that Players' Dugout breached Section 3(a) and/or 3(e) of the License Agreement by not paying royalties and commissions to Dr. House and/or not furnishing Dr. House with monthly reports showing the amounts of royalties and commissions payable during the preceding month.

(2) You must determine from the evidence whether Players' Dugout has proven that it is more likely true than not that Dr. House breached Section 3(c) and/or 11(e) of the License Agreement by (1) knowingly permitting third parties under his control or influence to sell or market the PAJTT Program who do not have a distributor agreement with Players' Dugout and/or (2) by failing to promptly report to Players' Dugout known or suspected third parties selling or marketing the PAJTT Program who do not have a contractual arrangement with Players' Dugout and then serve notice on such third parties that they are not authorized to sell or market the PAJTT Program.

(3)  If you determine from the evidence that Dr. House breached the License Agreement, then you must determine from the evidence whether Dr. House has proven that it is more likely true than not that Players' Dugout waived Dr. House's breach of the License Agreement.

You will then be asked to determine damages.

The parties are only asking you to focus on a few portions of the License Agreement in order to decide who breached the agreement, when the breach occurred, and what the consequences of those breaches are. As stated in the License Agreement, Dr. House is the "Licensor" and Players' Dugout is the "Licensee."

- Section 3 (a) Royalties, page 2;

- Section 3 (b) Commissions, page 2;

- Section 3 (c) Indirect Distributors; Piracy, page 3;

- Section 3 (d) Liquidated Damages; page 3

- Section 3 (e) Records and Reporting, page 3;

- Section 11(e) Representations and Warranties of Licensor, page 6.


**Interrogatory No. 1A**: Do you find from the evidence that Dr. House has proven that it is more likely true than not that Players' Dugout breached Section 3(a), and/or Section 3(e), of the License Agreement by not paying royalties and commissions to Dr. House and not furnishing Dr. House with monthly reports showing the amounts of royalties and commissions payable during the preceding month?

Circle your Answer:

Yes                              No

**Continue to Interrogatory No. 1B.**

**Interrogatory No. 1B:** Do you find from the evidence that Players' Dugout has proven that it is more likely true than not that Dr. House breached Section 3(c) and/or 11(e) of the License Agreement prior to June 29, 2016 by (1) knowingly permitting third parties under his control or influence to sell or market the PAJTT Program who do not have a distributor agreement with Players' Dugout and/or (2) by failing to promptly report to Players' Dugout known or suspected third parties selling or marketing the PAJTT Program who do not have a contractual relationship with Players' Dugout and then serve notice on such third parties that they are not authorized to sell or market the PAJTT Program?

Circle your Answer:

Yes                              No

**If you answered "yes" to Interrogatory No. 1A and "no" to Interrogatory No. 1B, then you will find in favor of Dr. House on his breach of contract claim.  Your determination on the breach of contract claim is complete.  Mark Verdict Form 1, Question 1 and proceed to Interrogatory No. 2A to determine damages.**

**If you answered "no" to Interrogatory No. 1A and "yes" to Interrogatory No. 1B, or or if you answered "yes" to Interrogatory No. 1A and "yes" to Interrogatory No. 1B, then continue to Interrogatory No. 1C.**

**Interrogatory No. 1C**: Do you find from the evidence that Dr. House has proven that it is more likely true than not that Players' Dugout waived Dr. House's breach of Section 3(c) and/or 11(e) of the License Agreement by (1) knowingly permitting third parties under his control or influence to sell or market the PAJTT Program who do not have a distributor agreement with Players' Dugout and/or (2) by failing to promptly report to Players' Dugout known or suspected third parties selling or marketing the PAJTT Program who do not have a contractual relationship with Players' Dugout and then serve notice on such third parties that they are not authorized to sell or market the PAJTT Program?

Circle Your Answer:

Yes:                    No:

**If you answered "yes" to Interrogatory No. 1C, then you have found in favor of Dr. House. If you answered "no" to Interrogatory No. 1C, then you have found in favor of Players' Dugout.  Mark Verdict Form 1, Question 1 and proceed to Interrogatory No. 2B to determine damages.**

You may not return a verdict for both Dr. House and Players' Dugout on the breach of contract claims.

## COUNT 1 AND COUNTERCLAIM 1: DAMAGES FOR BREACH OF LICENSE AGREEMENT CLAIMS

If you found breach of contract with respect to any of the allegations above, you must now determine what sum of money will fairly and reasonably compensate the non-breaching party for any damages which you find from the evidence resulted directly from the breach of contract. Damages for breach of contract include the natural and proximate consequences of the breach and damages reasonably supposed to have been within the contemplation of the parties at the time the contact was made.

The nonbreaching party is entitled to recover damages which you find from the evidence are reasonably certain in existence and amount. You may not award damages that are remote and speculative, nor may you award damages based on sympathy or guesswork. In determining the amount of damages, if any, that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. The law does not require that the nonbreaching party prove the amount of its losses with absolute mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. The damages you award must be fair compensation-no more and no less. There is no exact standard for fixing the compensation to be awarded for the damage caused. Any award you make should be fair in light of the evidence presented at trial. You will indicate your award of damages on the Verdict Form and as further instructed below.  You may either answer Interrogatory No. 2A or 2B, but not both.

**Interrogatory 2A:** If you delivered a verdict in favor of the Plaintiff  Dr. House you should award the amount of outstanding royalties and commissions owed to Dr. House under the License Agreement by Players' Dugout from the date that Players' Dugout suspended payments, August

8, 2015, to the date that Dr. House terminated the License Agreement, June 29, 2016 (stipulated by the parties as being $40,386.20).

Monetary award in favor of Tom House:  $_____

**Mark Verdict Form 1, Question 2.**

**Interrogatory 2B**: If you delivered a verdict in favor of Defendant Players' Dugout, then you must award Players' Dugout $500,000 under Section 3(d) of License Agreement.

Monetary award in favor of Players' Dugout: $_____

**Mark Verdict Form 1, Question 3.**

## COUNTS 3, 4, 7, AND 8 FOR TRADEMARK INFRINGEMENT

Dr. House and the NPA claim trademark infringement and unfair competition in the use of (1) the NPA mark of a silhouette of a pitcher with an overhead swoosh and (2) Dr. House's name in connection with Defendants' marketing efforts relating to the Velocity Plus Arm Care Program after the License Agreement ended.

The term "trademark" includes any word, name, symbol, or device, or any combination thereof, adopted and used by a person or company to identify and distinguish its good or services from those offered for sale by others and to indicate the source of the goods or services, even if the source is generally known. A trademark can be almost anything at all that is capable of identifying sources, such as a word, logo, particular shape or name. The owner of a trademark may enter into an agreement that permits another person to use the trademark.

Trademark infringement is the unauthorized use of a trademark in commerce without the permission of the trademark owner.  In this case, Dr. House and NPA permitted Players' Dugout to use the NPA Mark and Dr. House's name on their website and in association with their Velocity Plus Arm Care Program. Thus, NPA's trademark claims relate only to use of the NPA Mark after Player's Dugout received notice to cease and desist use of the mark on October 13, 2015, and not before because Players' Dugout was authorized to use it.  Dr. House's trademark claims relate only to use of his name after termination of the License Agreement on June 29, 2016 and not before because the parties agreed Players' Dugout was authorized to use it.

Plaintiffs have the burden of proving each of the following by a preponderance of the evidence: (1) that they possess a valid rights in the mark; (2) that Players' Dugout used the marks in commerce without the Plaintiff's consent; and (3) that the Players' Dugout used the marks in a manner likely to confuse consumers.

It is not necessary for a trademark owner to obtain a federal registration of its mark to assert or protect its right in the mark.

To obtain a federal trademark registration, the owner of the mark has to file an application with the United States Patent and Trademark Office. If the Patent and Trademark Office determines that the requirements for registration have been met, the mark will be published by the Patent and Trademark Office so that anyone who opposes the registration of the mark has an opportunity to do so. If no one opposes the application, the mark will then become registered. Once the owner of a trademark has obtained the right to exclude others from using the trademark for closely related product lines, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office. Thereafter, the owner may rely solely on the registration certificate to prove the right to exclude others from using the trademark in connection with products specified in or closely related to those stated in the registration. In this case, the NPA Mark is registered by Plaintiffs with the United States Patent and Trademark Office for use in relation to clothing, namely baseball jerseys, pants, hats, and pre-recorded DVDs and videotapes featuring baseball pitching instruction.

Unregistered marks can still be valid and provide the trademark owner with the exclusive right to use that mark in connection with certain products and services. In order to establish that an unregistered trademark is valid, or that a registered mark is valid when used in relation to products and services for which it has not been registered, it must be proven by a preponderance of the evidence that the mark has acquired secondary meaning.

You the jury will be asked to establish if Plaintiff has established by a preponderance of the evidence whether the marks at issue have secondary meanings.

**COUNTS 3, 4, 5, 6, AND 9: SECONDARY MEANING AS TO NPA MARK**

NPA's mark consists of "a silhouette of a pitcher with an overhead swoosh."  NPA's mark is registered for use in relation to clothing, namely baseball jerseys, pants, hats, and pre-recorded DVDs and videotapes, featuring baseball pitching instruction. It is presumed valid for use in connection with those products or those closely related.  To determine whether NPA's mark is valid and protectable on products and services for which it has not been registered, you must consider the recognition that the mark has among prospective customers. This market recognition is called the trademark's "secondary meaning."

A symbol acquires a secondary meaning when it has been used in such a way that its primarily significant in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what the source is. You must find that the preponderance of the evidence shows that a significant number of the consuming public associates the silhouette of a pitcher with an overhead swoosh with a single source, in order to find that is has acquired secondary meaning.

When you are determining whether the silhouette of a pitcher with an overhead swoosh has acquired a secondary meaning consider the following factors: direct consumer testimony; consumer surveys; exclusivity, length, and manner of use; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying.

**Interrogatory No. 3A:** Do you find by a preponderance of the evidence that NPA's mark has acquired secondary meaning?

Circle your Answer:

Yes                                  No

## COUNTS 5, 6, 7, 8, 9 AND 10: SECONDARY MEANING AS TO DR. HOUSE'S NAME

Dr. House's name is not registered with the U.S. Patent and Trademark Office. Normally, the law does not allow a person to register a surname unless it has acquired secondary meaning. Exclusive rights in a surname cannot be established without evidence of long and exclusive use which changes its significance to the public from a surname of an individual to a mark for particular goods or services.   Personal names used as trademarks are generally treated as descriptive terms under the law, and as with all descriptive marks they are only protected if, through usage, they have acquired distinctiveness and secondary meaning. A surname acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source.

Unregistered marks can still be valid and provide the trademark owner with the exclusive right to use that mark in connection with certain products and services. In order to establish that an unregistered trademark is valid, it must be proven by a preponderance of the evidence that the mark is descriptive, but has acquired secondary meaning.

For purposes of this test, a surname, such as that of Dr. House, is considered descriptive under the law. Thus, only if you determine that Dr. House's name has acquired secondary meaning should you consider whether the Defendants' actions infringed it.

When you are determining whether Dr. House's name has acquired a secondary meaning consider the following factors: direct consumer testimony; consumer surveys; exclusivity, length and manner of use; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying.

**Interrogatory No. 4A:** Do you find by a preponderance of the evidence that Dr. House's name has acquired secondary meaning?

Circle your Answer:

Yes                                        No

**If you answered "no" to 3A and 4A, then you have found for Players' Dugout and the Newtons on Counts 3, 4, 5, 6, 7, 8, 9 and 10.  Mark Verdict Form 2, Questions 1-6 and Verdict Form 3, Question 1 and 3.  Skip Interrogatories 5, 6, 7, 8 and 9 and move to Interrogatory No. 10A.**

**If you answered "yes" to Interrogatory 3A, then answer Interrogatory 5A and 5B.**

**If you answered "yes" to Interrogatory 4A, then answer Interrogatory 5C and 5D.**

**If you answered "yes" to both Interrogatory 3A and 3B, then answer Interrogatory 5A-D.**

**COUNTS 3, 4, 5, 6, 7, 8, 9 AND 10: LIKELIHOOD OF CONFUSION**

The Lanham Act makes any person who uses any word, term, name, symbol, or device in a way that is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association liable to the trademark owner. To prevail upon a trademark infringement and unfair competition claim, NPA must establish that the Defendants' use of the trademark creates a likelihood of confusion regarding the origin of the goods or services offered by the respective parties. This relates only to the time after the License Agreement was terminated.

To evaluate whether there is a likelihood of confusion in an action alleging trademark infringement and unfair competition under the Lanham Act, you should consider:

(1) Strength of plaintiff's mark:  The "strength" of a mark is a determination of the mark's distinctiveness and degree of recognition in the marketplace. A mark is "strong" if it is highly distinctive and it can become so because it is unique, because it has been the subject of wide and intensive advertisement, or because of a combination of both. The stronger and more distinctive the mark, the greater the protection you should give it. Confusion is more likely when the mark at issue is well recognized by the public as a reference to a specific business. When scrutinizing the "distinctiveness" of a mark, Courts utilize a "spectrum of distinctiveness" to categorize the mark as either (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. Marks are considered strong when they are suggestive, arbitrary, or fanciful. Marks are weak when they are descriptive. Finally, marks are unprotectable when they are generic. Here, the NPA Mark and Dr. House's name are descriptive.

(2) Relatedness of the goods or services: "Relatedness of the goods" is the degree to which the goods or services have a relationship to each other such that consumers are likely

to believe that, if they bear a similar mark, then they originate or are affiliated with the same source. Confusion is more likely when the goods or services are related. If you find that the goods or services offered by Dr. House and the NPA and Players' Dugout and the Newtons are closely related, then the more likely it is that consumers would be confused. Cases generally fit into one of three categories regarding the relatedness of the goods and services of the parties. First, if the parties compete directly by offering their goods and services, confusion is likely if the marks are sufficiently similar; second, if the goods or services are somewhat related but not competitive, the likelihood of confusion will turn on other factors; third, if the goods or services are totally unrelated, confusion is unlikely.

(3) <u>Similarity of the marks</u>: The similarity or dissimilarity of the marks at issue relates to the appearance, sound, connotation, or commercial impression created by the marks at issue. Confusion is more likely when the marks are similar. Here, the marks are identical.

(4) <u>Evidence of actual confusion</u>: Actual confusion is evidence of the fact that persons have actually been confused as to the source, affiliation, or sponsorship of the goods or services at issue. It is difficult to prove actual confusion and as such, a lack of such evidence if rarely significant.

(5) <u>Marketing channels used</u>: The marketing channels used relates to the similarity of how and to whom the goods or services of the parties are marketed or sold. Confusion is more likely when the marketing channels are similar.

(6) <u>Likely degree of purchaser care</u>: The likely degree of purchaser care is the attention that a purchaser is likely to devote when purchasing the accused infringer's products at

issue. The more casual the purchaser is when making such a purchase, the more likely there is to be confusion. The degree of care of even an attentive purchase, however, becomes less significant when the marks at issue are similar and especially so when the marks are identical.

(7) <u>Defendant's intent in selecting the marks</u>: Players' Dugout's and the Newtons' intent in selecting Dr. House's and NPA's marks is related to whether Players' Dugout and the Newtons used the mark at issue with the purpose of deriving a benefit from the reputation of Dr. House and the NPA, such as by causing confusion, mistake, or deceiving the public as to the source, affiliation or sponsorship of the goods or services at issue.

(8) <u>Likelihood of expansion of the product lines</u>: The likelihood of expansion of the product lines concerns the issue of whether the parties' respective businesses compete with each other, market their products to the same consumers, or whether there is a possibility that either party will expand its business to do so. Confusion iS more likely if such competition or its possibility exists. A determination that the parties do or will not compete, however, does not suggest there is no likelihood of confusion.

Not all of these factors will be relevant in every case, and they are simply a guide to help determine whether confusion is likely. Any other factors that bear on the likelihood of confusion may be considered.  In applying them the ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way. The presence or absence of any of the foregoing factors does not necessarily resolve whether there is a likelihood of confusion, because you must consider all of the relevant evidence.

Dr. House and NPA do not have to show that all, or even most, of the factors are present and in its favor in order to establish that there is likelihood of confusion.

A trademark may be infringed by individuals as well as a corporation. All participants, including those acting merely as officers of a corporation, may be jointly and severally liable in certain instances. Normally, corporate officers are shielded from liability for corporate torts, so an officer must do more than merely control corporate affairs of a corporation to be held personally liable for the corporation's infringement. Only where the officer has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities can an officer be held personally liable for the infringement.

**Interrogatory No. 5A**: If you have found secondary meaning in Interrogatory No. 3A as to NPA's mark, by a preponderance of the evidence did NPA prove that after requesting that Players' Dugout no longer use its mark on October 13, 2015, Players' Dugout used a silhouette of a pitcher with an overhead swoosh without the consent of the NPA in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods?

Circle your Answer:

Yes                                No

**Interrogatory No. 5B**: If you have found secondary meaning in Interrogatory No. 3A as to NPA's mark, by a preponderance of the evidence did NPA prove that after requesting that the Newtons no longer use its mark on October 13, 2015 the Newtons used a silhouette of a pitcher with an overhead swoosh without the consent of the NPA in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods?

Circle your Answer:

Yes                                        No


**Interrogatory No. 5C:** If you have found secondary meaning in Interrogatory No. 4A as to Dr. House's name, by a preponderance of the evidence did Dr. House prove that after the License Agreement ended on June 29, 2016, Players' Dugout used Dr. House's name without the consent of Dr. House in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods?

Circle your Answer:

Yes                                        No


**Interrogatory No. 5D**: If you have found secondary meaning in Interrogatory No. 4A as to Dr. House's name, by a preponderance of the evidence did Plaintiffs prove that after the License Agreement ended on June 29, 2016 the Newtons used Dr. House's name without the consent of the Plaintiffs in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods?

Circle your Answer:

Yes                                        No


**If you answered "yes" to Interrogatory 5A, then you found for NPA on its infringement claim against Players' Dugout in Count 3.  If you answered "no" to Interrogatory 5A, then you found for Players' Dugout.  Mark Verdict Form 2, Question 1.**

If you answered "yes" to Interrogatory 5B, then you found for NPA on its infringement claims against the Newtons in Count 4.  If you answered "no" to Interrogatory 5B, then you found for the Newtons.  Mark Verdict Form 2, Question 2.

If you answered "yes" to Interrogatory 5C, then you found for Dr. House on his infringement claim against Players' Dugout in Count 7.  If you answered "no" to Interrogatory 5C, then you found for Players' Dugout.  Mark Verdict Form 2, Question 3.

If you answered "yes" to Interrogatory 5D, then you found for Dr. House on his infringement claim against the Newtons in Count 8. If you answered "no" to Interrogatory 5D, then you found for the Newtons.  Mark Verdict Form 2, Question 4.

**COUNTS 5 AND 6: UNFAIR COMPETITION UNDER FEDERAL LAW**

You must next decide whether the Defendants are liable for unfair competition by false association/false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C.A. 1125(a)(1)(A).  False designation of origin under the Lanham Act imposes liability on any person who on or in connection with any goods or services uses in commerce any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which is likely to cause confusion, or to cause mistake, or to deceive as to the origin of his or her goods, services or commercial activities.

**Interrogatory No. 6A**: If you have found secondary meaning in Interrogatory No. 3A as to NPA's mark, do you find by a preponderance of the evidence that Defendants have used the mark as a false designation of origin, false or misleading description of fact or false or misleading representation of fact on their website after the License Agreement ended on June 29, 2016?

Circle your Answer:

Yes                          No

**Interrogatory No. 6B**: If you have found secondary meaning in Interrogatory No. 4A as to Dr. House's name, do you find by a preponderance of the evidence that Defendants have used Dr. House's name as a false designation of origin, false or misleading description of fact or false or misleading representation of fact on their website after the License Agreement ended on June 29, 2016?

Circle your Answer:

Yes                          No

**Interrogatory No. 6C**: Do you find by a preponderance of the evidence that Player's Dugout and the Newtons use of the above was likely to cause confusion, mistake or deceive third

parties as to the origin of the goods, services or commercial activities being offered as described in the prior instruction on likelihood of confusion?

Circle your Answer:

Yes                               No

**If you answered "yes" to Interrogatory Nos. 6A and/or 6B and answered "yes" to Interrogatory No. 6C, then you found for NPA and Dr. House on their Lanham Act unfair competition claim against Defendants in Count 5, and 6.  Mark Verdict Form 2, Questions 5 and 6. Proceed to Interrogatory 7A and 7B to determine damages.**

**If you answered "no" to Interrogatory No. 6C, then you found for Players' Dugout and the Newtons' on Plaintiffs Lanham Act unfair competition claim in Counts 5 and 6.  Mark Verdict Form 2, Questions 5 and 6.**

## COUNTS 3, 4, 7, AND 8: INSTRUCTION ON DAMAGES FOR VIOLATIONS OF LANHAM ACT- TRADEMARK INFRINGEMENT

### ACTUAL DAMAGES

If you answered "yes" to Interrogatories 5A and 5B and/or 5C and 5D, or 6C you must determine the amount of damages to which the NPA and Dr. House are entitled on their claims for trademark infringement and unfair competition under the Lanham Act and specifically attributable to any ongoing use of the NPA Mark and Dr. House's unregistered name for the period following termination of the License Agreement on June 29, 2016. The NPA and Dr. House have the burden of proving actual damages by a preponderance of the evidence. Damages means the amount money which will reasonably and fairly compensate the NPA and Dr. House for any injury or property damages you find was caused by Players' Dugout and the Newtons infringement or unfair competition.

Difficulty or uncertainty in ascertaining or measuring the precise amount of any damages does not preclude recovery, and you should use your best judgment in determining the amount of such damages, if any, based on the evidence.

In determining actual damages, you may consider whether the NPA and Dr. House suffered any measurable loss to their goodwill, including injury to the NPA's and Dr. House's general reputation. The goodwill of a company is an intangible business value which reflects the basic human tendency to do business with a merchant who offers products of the type and quality which the customer desires and expects. Service to the customer and a willingness to stand behind a warranty and other representations about the quality of the products which are sold by a merchant are all factors in the goodwill of that business.

**Interrogatory No. 7A**: What total sum of actual damages do you find from the evidence will reasonably and fairly compensate Dr. House and NPA for the actual damages he sustained as a result of the trademark infringement?

Amount of actual damages: _____

**Mark Verdict Form 2, Question 7.  Proceed to Interrogatory 7B.**

**LOST PROFITS**

You may also award the NPA and Dr. House all profits earned by Players' Dugout and the Newtons specifically attributable to the use of the NPA's and Dr. House's marks, but you may not include any amount that you took into account in determining actual damages. An award to the NPA and Dr. House of Players' Dugout's and the Newtons' profits derived from the sale of the Velocity Plus Arm Care Program does not require a showing of actual confusion, nor a showing of willful or intentional infringement by Players' Dugout and the Newtons.

Players' Dugout's and the Newtons' profit is determined by deducting all of their provable expenses from gross revenue. "Gross revenue" is the money that Players' Dugout and the Newtons received, specifically attributable to any ongoing use of the NPA Mark and Dr. House's unregistered name following the termination of the License Agreement on June 29, 2016. The NPA and Dr. House have the burden of proving the Players' Dugout's and the Newtons' gross revenues specifically attributable to any ongoing use of the NPA Mark and Dr. House's unregistered name following termination of the License Agreement by a preponderance of the evidence. "Expenses" are all operating and production costs incurred by the Players' Dugout and the Newtons in generating gross revenues. Players' Dugout and the Newtons have the burden of proving their expenses by a preponderance of the evidence.

**Interrogatory No. 7B**: What total sum of lost profits damages attributed to the use of NPA's Mark and/or Dr. House's unregistered name do you find from the evidence will reasonably and fairly compensate the NPA and Dr. House? Lost Profits: $_____

**Mark Verdict Form 2, Question 7.**

**COUNTS 9 AND 10: UNFAIR COMPETITION UNDER KENTUCKY LAW**

The NPA and Dr. House also assert claims under Kentucky law for unfair competition against Players' Dugout and the Newtons. Kentucky state law defines unfair competition as either:

(1) Injuring a plaintiff by taking his business or impairing his goodwill; or

(2) Unfairly profiting by the use of plaintiff's name, or a similar one, in exploiting his goodwill.

The ultimate inquiry is whether the Players' Dugout and the Newtons use of the NPA mark or Dr. House's name, or both, was reasonably calculated to mislead, deceive, or confuse the public into believing that they are associated with the Plaintiffs.

**Interrogatory No. 8A**: If you have found secondary meaning in Interrogatory No. 3A or 4A as to NPA's mark or Dr. Houses' name and have found likelihood of confusion under Interrogatory No. 5A or 5C, do you find by a preponderance of the evidence that Players' Dugout engaged in unfair competition under Kentucky common law?

Circle your Answer:

Yes                              No


**Interrogatory No. 8B:** If you answered "Yes" to the above, indicate below the amount of money that you believe will reasonably compensate the NPA and Dr. House for actual injuries and harm they sustained as a result of Players' Dugout's unfair competition under Kentucky common law.

$_____

**Interrogatory No. 8C**: If you have found secondary meaning in Interrogatory No. 3A or 4A as to NPA's mark or Dr. Houses' name and have found likelihood of confusion under Interrogatory No. 5A or 5C, do you find by a preponderance of the evidence that the Newtons engaged in unfair competition under Kentucky common law?

Circle your Answer:

Yes                              No


**Interrogatory No. 8D:** If you answered "Yes" to the above, indicate below the amount of money that you believe will reasonably compensate the NPA and Dr. House for actual injuries and harms they sustained as a result of the Newtons' unfair competition under Kentucky common law.

$_____

**If you answered "yes" to Interrogatory 8A and answered 8B, you have found for NPA and Dr. House against Players' Dugout on Count 9.  Mark Verdict Form 3, Questions 1 and 2.  If you answered "no" to Interrogatory 8A, then you have found for Players' Dugout on Count 9. Mark Verdict Form 3, Question 1.**

**If you answered "yes" to Interrogatory 8C and answered 8D, you have found for NPA and Dr. House against the Newtons on Counts 10.  Mark Verdict Form 3, Questions 3 and 4.  If you answered "no" to Interrogatory 8C, then you have found for the Newtons on Count 10. Mark Verdict Form 3, Question 3.**

**If you awarded damages in 8B or 8D, Proceed to Interrogatory 9A-D. If not, Proceed to Interrogatory 10A.**

**COUNTS 9, 10, AND 13: PUNITIVE DAMAGES UNDER KENTUCKY LAW**

If you find from a preponderance of the evidence that Players' Dugout's or the Newtons' unfair competition was maliciously, wantonly, or oppressively done, then you may in your discretion award punitive damages against Players' Dugout or the Newtons in addition to actual damages and lost profits already awarded in Interrogatory No. 8B and/or Interrogatory No. 8D above.

As used in this instruction:

"Punitive damages" are damages awarded for the purpose of punishing Players' Dugout or the Newtons for their misconduct in this case and deterring Players' Dugout or the Newtons and others from engaging in similar conduct in the future.

"Malice" means conduct by Players' Dugout or the Newtons was specifically intended to cause tangible or intangible injury to the NPA or Dr. House or conduct by Players' Dugout or the Newtons that was done with reckless disregard of NPA's or Dr. House's rights.

An act is done "wantonly" if done reckless or callous disregard of, or indifference to, the rights of the injured person.

An act is done "oppressively" if it is done in a manner that injures, damages, or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power or by taking advantage of some weakness or disability, or misfortune of another person.

Whether you make an award of punitive damages, in addition to the actual damages previously awarded, is a matter exclusively within your discretion. If however, you award punitive damages, you should consider the following factors in determining the amount:

(a)      The likelihood at the time of such misconduct by the Players' Dugout or the Newtons that serious harm would arise from it;

(b)      the degree of Players' Dugout's or the Newtons' awareness of that likelihood;

(c)      the profitability of the misconduct to Players' Dugout or the Newtons;

(d)      the duration of the misconduct and any concealment of it by Players' Dugout or the Newtons; and

(e)      any actions by Players' Dugout or the Newtons to remedy the misconduct once it became known to the Players' Dugout or the Newtons.

If you award punitive damages, they must be fixed with calm discretion and sound reason, and must never be awarded, or fixed in amount, because of any sympathy, or bias, or prejudice with respect to any party to the case.

**Interrogatory No. 9A**: Do you decide to award punitive damages to the NPA and Dr. House in accordance with the above instructions against Players' Dugout and the Newtons?

Circle your Answer:

Yes              No

**Interrogatory No. 9B**: If you marked "Yes" above, state the amount of punitive damages you decide to award the NPA and the Newtons: $_____

**Mark Verdict Form 3, Questions 5 and 6.**

## COUNTERCLAIM 5: DEFAMATION CLAIM PER SE

Players' Dugout and the Newtons have accused the NPA of making a false and defamatory statement per se. This claim is based on a statement in an October 26, 2015 email sent by an NPA representative to NPA certified coaches. Players' Dugout and the Newtons claims that the statement in the email was false.

You will find Player's Dugout and the Newtons have proved defamation per se if you find the following elements by a preponderance of the evidence:

(1) That NPA made a statement that was published to third parties that was reasonably understood by third parties to mean that players were being injured by Players' Dugout and the Newtons as a result of Players' Dugout and the Newtons not using all of the protocols of the PAJTT program,

(2) That the statement was false,

(3) That such statement was published recklessly or negligently,

(4) That such statement resulted in injury to reputation; The injury per se results to a person when the defamatory language subjects the person to hatred, ridicule, contempt, or disgrace, or tends to induce an evil opinion in the mind of right thinking people. It also includes statements that a person is not fit to perform duties associated with his profession. The injury per se against a corporation results when the words contain an imputation of fraud, deceit, dishonesty, or other reprehensible conduct on the part of corporation.

With regard to corporate party, NPA, since a corporation acts through its agents, the actions of the corporate agent (persons who act on behalf of the corporation) are deemed to be the

corporation's acts. The corporate agents who said the defamatory statements are also liable if they are named parties to the lawsuit.

Truth is a complete defense to a claim for defamation. Thus, if you find by a preponderance of the evidence that the NPA has proven the truth of the statement at issue, then you must find for the NPA on Players' Dugout's and the Newtons' claim for defamation. Truth is a complete defense to defamation, and thus a party able to prove the truth of the defamatory statement at issue cannot be held liable for it.

Special damages are presumed where defamation per se is proven. "Special, economic damages" consist of those beyond simply embarrassment, humiliation, mental anguish, etc., and which support some actual economic, pecuniary loss. Therefore, if you find defamation per se, then you must award at least a nominal sum as damages are presumed.

**Interrogatory No. 10A:** Do you find by a preponderance of the evidence that Players' Dugout and the Newtons have proven each element of the claim of defamation per se?

Circle your Answer:

Yes             No

**Interrogatory No. 10B:**

If you answered "Yes" to the above Interrogatory No. 10A, please state the amount you have determined from the evidence will fairly and reasonably compensate Players' Dugout and the Newtons for whatever damages you believe from the evidence they have sustained as a direct result of the NPA's statement in the October 26, 2015 email.

$_____

If you answered "No" to the above Interrogatory No. 10A, then you have found for NPA on Players' Dugout's and the Newtons' claim for defamation per se in  Counterclaim 5.  Mark Verdict Form 4, Question 1. Please proceed to Interrogatory No. 11C.

If you answered "Yes" to the above Interrogatory No. 10A and Interrogatory No. 10B, then you have found for Players' Dugout and the Newtons against NPA on the claim for defamation per se in Counterclaim 5. Mark Verdict Form 4, Questions 1-2. Please continue to Interrogatory 11C.

## COUNTERCLAIM 5: DEFAMATION CLAIM PER QUOD

Players' Dugout has accused the NPA of making a false and defamatory statement per quod. This claim is based on a statement in an October 26, 2015 email sent by an NPA representative to NPA certified coaches. Players' Dugout claims that the statement in the email was false.

You will find Player's Dugout has proved defamation per quod if you find the following elements by a preponderance of the evidence:

(1) That NPA made a statement that was published to third parties that was reasonably understood by third parties to mean that players were being injured by Players' Dugout and the Newtons as a result of Players' Dugout and the Newtons not using all of the protocols of the PAJTT program,

(2) That the statement was false,

(3) That such statement was published with fault amounting to negligence or actual malice,

(4) That such statement resulted in injury to reputation, and

(5) That Player's Dugout suffered actual economic loss directly and proximately caused by publication of the statement.

With regard to corporate party, NPA, since a corporation acts through its agents, the actions of the corporate agent (persons who act on behalf of the corporation) are deemed to be the corporation's acts. The corporate agents who said the defamatory statements are also liable if they are named parties to the lawsuit.

Truth is a complete defense to a claim for defamation. Thus, if you find by a preponderance of the evidence that the NPA has proven the truth of the statement at issue, then you must find for

the NPA on Players' Dugout's claim for defamation per quod. Truth is a complete defense to defamation, and thus a party able to prove the truth of the defamatory statement at issue cannot be held liable for it.

"Special, economic damages" consist of those beyond simply embarrassment, humiliation, mental anguish, etc., and which support some actual economic, pecuniary loss.

**Interrogatory No. 11C:** Do you find by a preponderance of the evidence that Players' Dugout has proven each element of the claim of defamation per quod?

Circle your Answer:

Yes                No

**Interrogatory No. 11D:** If you answered "Yes" to the above Interrogatory No. 11C, please state the amount you have determined from the evidence will fairly and reasonably compensate Players' Dugout for the special economic damages directly caused by NPA's statement in the October 26, 2015 email?

$_____

**If you answered "No" to the above Interrogatory No. 11C, then you have found for NPA on Players' Dugout's claim for defamation per quod in Counterclaim 5. Mark Verdict Form 4, Question 3. Please proceed to Interrogatory No. 12A.**

**If you answered "Yes" to the above Interrogatory No. 11C and Interrogatory No. 11D, then you have found for Players' Dugout against NPA on Players' Dugout's claim for**

**defamation per quod in Counterclaim 5. Mark Verdict Form 4, Questions 3-4. Please continue to Interrogatory 12A.**

## COUNTERCLAIM 6: DEFENDANTS' UNFAIR COMPETITION
## CLAIM UNDER FEDERAL LAW

Players' Dugout and the Newtons also assert a claim for Federal Unfair Competition against the Plaintiffs. To state a cause of action for misleading advertisement or promotional material under the Lanham Act, Players Dugout and the Newtons must establish the following:

(1) NPA and Dr. House made a false or misleading statement of fact in advertising or promotion that misrepresents the nature, characteristics, qualities or origin of Players' Dugouts' Velocity Plus Program;

(2) that the statement actually or tends to deceive a substantial portion of the intended audience;

(3) that the statement is material in that it will likely influence the deceived consumer's purchasing decisions;

(4) the advertisement or promotional material  was introduced into interstate commerce; and

(5) there is some causal link between the challenged statements and harm to the plaintiff.


Players' Dugout and the Newtons allege that the nature, characteristics, and quality of the services provided by their business as baseball instructors was misrepresented when the NPA issued the statement on October 26, 2015 to other coaches and businesses working with Players' Dugout that Defendants were harming players through their failure to follow protocols of the PAJTT Program.

If you, the Jury, have seen from the evidence presented at trial that the statement in the October 26, 2015 email was a false or misleading statement of fact, you must find in favor of Players' Dugout and the Newtons.

**Interrogatory No. 12A:** Do you find by a preponderance of the evidence that the NPA engaged in unfair competition under the Lanham Act?

Circle your Answer:

Yes          No

**Interrogatory No. 12B:** If you answered "Yes" to the above, indicate below the amount of money that you believe will reasonably compensate the Players' Dugout and the Newtons for actual injuries and harm they sustained as a result of the NPA's unfair competition under the Lanham Act. Players' Dugout and the Newtons have the burden of proving actual damages by a preponderance of the evidence. You should consider the following factors: the injury to Defendants' reputation; the injury to Defendants' goodwill; lost profits that Players' Dugout and the Newtons would have earned but for the NPA's tortious acts; the expense of preventing consumers from being deceived; and the cost of future corrective advertising reasonably required to correct any public confusion caused by the unfair competition.

$_____

**If you mark "yes" to Interrogatory 12A and answered 12B, then you have found for Players' Dugout and the Newtons on Counterclaim 6.  Mark Verdict Form 5, Questions 1 and 2.**

**If you marked "no" to Interrogatory 12A then you have found for NPA on Counterclaim 6. Mark Verdict Form 5, Question 1.**

**Proceed to Interrogatory 13A.**

## COUNTERCLAIM 9: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

Players' Dugout and the Newtons argue that the NPA wrongfully interfered with Players' Dugout's and the Newton's prospective or future business relationships with various third parties who Players' Dugout and the Newtons might have attracted and authorized to utilize the PAJTT Program.

To prove tortious interference with prospective business advantage, Players' Dugout and the Newtons must show:

(1) Players' Dugout and the Newtons had a valid business relationship or expectancy with customers and businesses to use the PAJTT Program;

(2) that the NPA was aware of this relationship or expectancy;

(3) that the NPA intentionally interfered with this relationship or expectancy by sending the October 26, 2015 email;

(4) that the NPA's motive behind the email was improper;

(5) that Players' Dugout and the Newtons incurred special economic damages because of the NPA's intentional and improper interference; and

(6) there is a causal connection between Players' Dugout's and the Newtons' loss of business because of the NPA's wrongful conduct.

To recover, Players' Dugout and the Newtons must show malice or some significantly wrongful conduct. "Wrongful conduct" includes fraudulent misrepresentation.

**Interrogatory No 13A**: Do you find by a preponderance of the evidence that Players'

Dugout and the Newtons have demonstrated each element of this claim?

Circle your Answer:

Yes:                              No:

**If you mark "yes to Interrogatory 13A, then you have found for Players' Dugout and the Newtons on Counterclaim 9.  Mark Verdict Form 6, Question 1.  Proceed to Interrogatory 14A to determine damages.**

**If you marked "no" to Interrogatory 13A then you have found for NPA and Dr. House on Counterclaim 9.  Mark Verdict Form 6, Question 1.  Proceed to Interrogatory 15A.**

## COUNTERCLAIM 9: DAMAGES FOR TORTIOUS INTERFERENCE WITH PROSEPCTIVE BUSINESS ADVANTAGE

The appropriate measure of damages for tortious interference with contractual and economic relations is Players' Dugout and the Newtons' potential lost profits.

**Interrogatory No. 14A**: Damages- Prospective Lost Profits - If you answered "Yes" to Interrogatory No. 13A above, Players' Dugout and the Newtons are entitled to prospective lost profits. You will award Players' Dugout and the Newtons such amount as you find will fairly and adequately compensate Defendants for losses suffered. Only damages that are the direct and natural result of the NPA's tortious interference with prospective business relationships between Players' Dugout and the Newtons and potential third party customers and businesses may be recovered. Please state the amount you have determined from the evidence will fairly and reasonably compensate the Players' Dugout and the Newtons from damages suffered as a result of the NPA's tortious interference with prospective business relationships.

$\underline{\hspace{6cm}}$

**Mark Verdict Form 6, Question 2.  Proceed to Interrogatory 15A.**

## COUNTERCLAIMS 6 AND 9: PUNITIVE DAMAGES

If you find for Players' Dugout and the Newtons and award them a sum or sums in damages under Interrogatory No. 10B, Interrogatory No. 11D, Interrogatory No. 12B, and/or Interrogatory No. 14A, and if you are further satisfied from clear and convincing evidence that the NPA's conduct toward Players' Dugout and the Newtons was maliciously, wantonly, or oppressively done, then you may in your discretion award punitive damages against NPA, in addition to the compensatory damages already awarded in Interrogatory No. 10B, Interrogatory No. 11D, Interrogatory No. 12B, and/or Interrogatory No. 14A,  regarding compensatory damages. Remember, again, a corporation can only act through its agents.

As used in this instruction:

"Punitive damages" are damages awarded for the purpose of punishing the NPA for its misconduct in this case and deterring the NPA and others from engaging in similar conduct in the future.

"Malice" means conduct by the NPA that was specifically intended to cause tangible or intangible injury to Players' Dugout and/or the Newtons or conduct by the NPA that was done with reckless disregard of Players' Dugout's and/or the Newtons' rights.

An act is done "wantonly" if done reckless or callous disregard of, or indifference to, the rights of the injured person.

An act is done "oppressively" if done in a manner that injures, damages, or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power or by taking advantage of some weakness or disability, or misfortune of another person.

Whether you make an award of punitive damages, in addition to the compensatory damages previously awarded, is a matter exclusively within your discretion. If however, you award punitive damages, you should consider the following factors in determining the amount:

(a)      The likelihood at the time of such misconduct by the NPA that serious harm would arise from it;

(b)      the degree of the NPA's awareness of that likelihood;

(c)      the profitability of the misconduct to the NPA;

(d)      the duration of the misconduct and any concealment of it by the NPA; and

(e)      any actions by the NPA to remedy the misconduct once it became known to the defendant.

If you award punitive damages, they must be fixed with calm discretion and sound reason, and must never be either awarded, or fixed in amount, because of any sympathy, or bias, or prejudice with respect to any party to the case.

**Interrogatory No. 15A:** Do you decide to award punitive damages to Players' Dugout and the Newtons in accordance with the above instructions?

Circle your Answer:

Yes:                    No:

**Interrogatory No. 15B:** If you marked "Yes" above, state the amount of punitive damages you decide to award Players' Dugout and the Newtons: $_____

**If you answered "no" to Interrogatory No. 15A,  Mark Verdict Form 7, Question 1.**

**If you answered "yes" to Interrogatory No. 15A and awarded punitive damages, Mark Verdict Form 7, Questions 1 and 2.**

**JURY DELIBERATIONS**

When you retire, you will discuss the case with your fellow jurors to reach agreement if you can do so. The first order of business should be the selection of a foreperson. That person will preside over your deliberations and speak for you here in Court.

## DUTY TO DELIBERATE

The verdict must represent the considered judgment of each of you. In order to return a verdict, it is necessary that each juror agree. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregard of individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

## NOTES

During this trial, I permitted you to take notes. You were not required to take notes. If you did not take notes, you should not be influenced by another juror's notes, but should rely upon your own recollection of the evidence.

Frequently, there is a tendency to attach too much importance to what a person writes down. Some testimony that is considered unimportant at the time presented and not written down may take on greater importance later in the trial in light of all the evidence presented, the final arguments, and my instructions on the law.

Accordingly, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Your memory should be your greatest asset when it comes time to deciding this case. If your memory should differ from your notes, then you should rely on your memory and not on your notes.

You will notice that we do have an official court reporter making a record of the trial. However, we will not have a typewritten transcript from the record available for your use in reaching a decision in this case.

## ELECTION OF FOREPERSON AND RETURN OF VERDICT

Upon retiring to the jury room, you will select one of you to act as your foreperson. The foreperson will preside over your deliberations, and will be your spokesperson here in court.

Verdict forms have been prepared for your convenience.

You will take these forms to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form that sets forth the verdict upon which you unanimously agree. You will then return with your verdict to the courtroom.

## COMMUNICATION WITH THE COURT

Do not talk to the CSO, or to me, or to anyone else, except each other, about this case. If it becomes necessary during your deliberations to communicate with me, you may send a note through the CSO signed by your foreperson or by one or more members of the jury. You may only communicate with me by a signed writing or here in open Court. If you write me a message, the CSO will give it to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson. 6

Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you reach a unanimous verdict or have been discharged.

**EFFECT OF INSTRUCTION AS TO DAMAGES**

The fact that the Court will instruct you as to the proper measure of damages should not be considered as indicating any view of mine as to which party is entitled to your verdict in this case. Instructions as to the measure of damages are given for your guidance only in the event you should find in favor of Plaintiffs by a preponderance of the evidence and/or in favor of Defendants by a preponderance of the evidence in accordance with the other instructions.  Any damages you award must have a reasonable basis in the evidence. They need not be mathematically exact but there must be enough evidence for you to make a reasonable estimate of damages without speculation or guess work.

## REACHING AGREEMENT

Your verdict must be unanimous and based solely on the evidence and on the law as I have given it to you in these instructions. You must all agree on any verdict you reach.

Each of you must decide the case for yourself, but you should do so only after you consider all the evidence, discuss it fully with each other, and listen to the views of your fellow jurors.

Do not be afraid to change your opinion if you think you are wrong. But do not come to a decision simply because other jurors think it is right.

This case has taken a great deal of time and effort to prepare and try. There is no reason to think it could be better tried or that another jury is better qualified to decide it. Therefore, it is important that you reach a verdict if you can do so conscientiously. If it looks at some point as if you may have difficulty in reaching a unanimous verdict, you should reexamine your position to see whether you have given careful consideration and sufficient weight to the evidence that has favorably impressed the jurors who disagree with you. You should not hesitate to reconsider your views from time to time and to change them if you think that is appropriate.

It is important that you attempt to return a verdict but, of course, only if each of you can do so after having made his or her own conscientious determination. Do not surrender an honest conviction as to the weight and effect of the evidence simply to reach a verdict.